# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Allison Transmission, Inc. | ) ASBCA No. 59204 |
| | ) |
| Under Contract No. DAAE07-99-C-N031 | ) |

APPEARANCES FOR THE APPELLANT:      Scott E. Pickens, Esq.
William M. Jack, Esq.
  Barnes & Thornburg LLP
  Washington, DC

APPEARANCES FOR THE GOVERNMENT:      E. Michael Chiaparas, Esq.
  DCMA Chief Trial Attorney
Arthur M. Taylor, Esq.
Samuel W. Morris, Esq.
  Trial Attorneys
  Defense Contract Management Agency
  Manassas, VA

## OPINION BY ADMINISTRATIVE JUDGE DELMAN PURSUANT TO BOARD RULE 12.2

In this appeal Allison Transmission, Inc., (appellant or Allison) disputes the government's entitlement to compound interest on an acknowledged liability to pay increased costs arising out of a voluntary cost accounting change. Appellant elected to prosecute the appeal under Board Rule 12.2,[1] Expedited Procedures, and both parties have agreed to waive oral hearing and to submit their positions on the record.[2] The Board has jurisdiction under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109.

---

[1] The Contract Disputes Act, implemented by Board Rule 12.2, provides that this decision shall have no value as precedent, and in the absence of fraud shall be final and conclusive and may not be appealed or set aside.

[2] Allison's record submission is entitled "APPELLANT'S MOTION FOR JUDGMENT AND MEMORANDUM IN SUPPORT." The government's record submission is entitled "GOVERNMENT'S CROSS MOTION FOR SUMMARY JUDGMENT." Notwithstanding these captions, this appeal is being adjudicated on the record at the parties' request pursuant to Board Rule 11.

1. Contract No. DAAE07-99-C-N031 (Contract N031) was awarded by the U.S. Army Tank Automotive Command (government) to Allison on 12 July 1999. This contract contains the following CAS-related contract clauses in the FAR which are incorporated by reference at Section I of the contract: FAR 52.230-2, COST ACCOUNTING STANDARDS (APR 1998); FAR 52.230-3, DISCLOSURE AND CONSISTENCY OF COST ACCOUNTING PRACTICES (APR 1998); and FAR 52.230-6, ADMINISTRATION OF COST ACCOUNTING STANDARDS (APR 1996).[3] (R4, tab 1)

2. By letter dated 30 April 2007, Allison submitted to the Defense Contract Management Agency (DCMA) a notification of a change to its cost accounting practices, effective 1 January 2008. The change eliminated Allison's Engineering Cost Center Group 4C, previously disclosed in Allison's CAS Disclosure Statement. Allison advised the government as follows:

> The departments within this cost center group [4C] will become part of burden center group 4Y and will no longer write time tickets to be charged direct. The functions currently being performed in 4C are to be allocated over the remaining cost center groups based on charge-out labor.

Appellant requested the "concurrence" of the DCMA Administrative Contracting Officer (ACO) with the change. The ACO signed his name on the concurrence line of this letter on 30 May 2007. (App. supp. R4, tab 14; gov't reply br., ex. G-8, Stout decl. ¶ 3)

3. By letter to the ACO dated 9 October 2008, Allison submitted to DCMA a cost impact proposal related to the cost accounting practice change. Allison determined that as a result of the change, the government paid increased costs in the amount of $599,019.79. (App. supp. R4, tab 15)

4. On 25 March 2010 the Defense Contract Audit Agency (DCAA) issued a memorandum to the ACO returning the impact proposal to appellant for failing to follow the prescribed format (gov't mot., ex. G-4). Allison was so advised by letter of that same date (gov't mot., ex. G-5).

---

[3] The parties have stipulated that the April 1998 CAS clause cited herein is the controlling CAS clause in this appeal, and that the 2012 CAS clause cited by appellant in its motion is not materially different insofar as pertinent here. The parties have also stipulated that FAR Subpart 30.6, effective 8 April 2005, may be consulted and used by the Board as appropriate. (App. reply, attach. 1, Stipulation)

5. By letter to DCMA dated 15 April 2010, Allison resubmitted its cost impact proposal related to this cost accounting practice change. Again, Allison determined that as a result of the change the government paid increased costs in the amount of $599,019.79. (App. supp. R4, tab 16)

6. By memorandum to the ACO dated 17 January 2013, DCAA provided a Rough Order of Magnitude (ROM) estimate on the cost impact to the government resulting from the cost accounting practice change. DCAA described the change as a unilateral change. The ROM covered the cost impact to one prime contract between Allison and the government, Contract N031, and two subcontracts awarded to Allison by prime contractor General Dynamics (projects "P920" and "P929"). DCAA concluded that Allison overstated the cost impact by $443,904.79, and therefore the total increased costs paid by the government were $155,115.00. DCAA linked the overstated cost impact figure to several errors committed by Allison in its cost impact calculation methodology. (R4, tab 2)

7. By letter to appellant dated 7 March 2013, the ACO stated that "ATI owes a net overstatement amount of $155,115.00." The ACO also stated that, "[i]n accordance with FAR 52.230-2(a)(5), interest will be applicable to the final negotiated amount." (R4, tab 3)

8. By letter to the ACO dated 12 March 2013, Allison agreed to pay the government the principal amount of $155,115. With respect to interest, appellant stated: "The interest shall start to accumulate 30 days from the receipt of the demand letter.... ATI has not received a demand letter so the estimated interest would be $0." (R4, tab 4)

9. By letter to Allison dated 27 September 2013, the ACO advised that she had "privity" over Contract N031, but not over the two subcontracts. Based upon revised calculations, the ACO agreed to settle Contract N031 for $165,424.[4] Again, the ACO stated, "[i]n accordance with FAR 52.230-2(a)(5), interest will be applicable to the final negotiated amount." (R4, tab 5)

10. By letter to the ACO dated 11 October 2013, Allison agreed to pay the principal amount of $165,424. With respect to interest, appellant stated as follows:

> 2. ATI will pay interest on the $165,424 starting on October 1, 2013 in the amount of $408.38. This calculation is based on the interest starting to accumulate

---

[4] This upward adjustment is attributable to the removal of the subcontracts "P920" and "P929" from the original cost impact calculation.

effective October 1, 2013 until October 31, 2013 when we anticipate payment would be made.

Allison attached a 2009 letter from an ACO on an unrelated 2004 cost accounting change in support of its position on interest. (R4, tab 6)

11. On 23 December 2013, the ACO issued a contracting officer's final decision (COFD) to Allison, asserting a government claim of $199,101.00, inclusive of interest to the date of the decision, for the cost impact to the government resulting from Allison's cost accounting practice change. The COFD identified Contract N031 as the representative contract. The government's claim of $199,101.00 was comprised of the principal amount of $165,424.00, plus compound interest in the amount of $33,676.62 covering the period of time between the estimated government overpayment of the increased costs (30 June 2008), through the date of the final decision. (R4, tabs 7-8)

12. Insofar as pertinent, the COFD stated:

> Even if a unilateral change is otherwise acceptable, increased costs to the government as a result of not consistently following the prior practice in contracts awarded under the prior practice are to be recovered by the government, with compound interest. While making no determination in this final decision as to the ultimate CAS compliance or non-compliance of the change, recovery as above is appropriate in any event.

(R4, tab 7 at 2)

13. By letter to the ACO dated 17 January 2014, Allison requested that the ACO rescind her 23 December 2013 COFD. Among other things, Allison stated that the government had no legal basis to assess any interest:

> Absent a CAS noncompliance, the Government should review our previous communications under FAR 52.230-2(a)(4) that requires the Contractor and the Government to negotiate and agree to an equitable adjustment as provided in the Changes clause of the contract. Because there is no CAS noncompliance associated with this accounting change, there is therefore no legal basis for the assessment of interest.

(R4, tab 9 at 1)

4

14. By letter to Allison dated 3 February 2014, the ACO refused to rescind the COFD (R4, tab 10).

15. Appellant timely appealed the COFD to this Board by notice dated 7 March 2014.

16. The following Title 41 statutory provisions govern this appeal:

**§ 1502. Cost accounting standards**

....

(f) IMPLEMENTING REGULATIONS.—The Board shall prescribe regulations for the implementation of cost accounting standards prescribed or interpreted under this section. The regulations shall be incorporated into the Federal Acquisition Regulation and *shall require contractors and subcontractors as a condition of contracting with the Federal Government to—*

(1) disclose in writing their cost accounting practices...; and

(2) *agree to a contract price adjustment, with interest, for any increased costs paid to the contractor or subcontractor by the Federal Government because of a change in the contractor's or subcontractor's cost accounting practices* or a failure by the contractor or subcontractor to comply with applicable cost accounting standards.

....

**§ 1503. Contract price adjustment**

....

(b) AMOUNT OF ADJUSTMENT.—A contract price adjustment undertaken under section 1502(f)(2) of this title shall be made, where applicable, on relevant contracts between the Federal Government and the contractor that are subject to the cost accounting standards so as to protect the Federal Government from payment, in the aggregate, of

5

increased costs, as defined by the Cost Accounting Standards Board....

(c) INTEREST.—The interest rate applicable to the contract price adjustment is the annual rate of interest established under section 6621 of the Internal Revenue Code of 1986 (26 U.S.C. 6621) for the period. Interest accrues from the time payments of the increased costs were made to the contractor or subcontractor to the time the Federal Government receives full compensation for the price adjustment. [Emphasis added]

17. The following provisions of the CAS clause, FAR 52.230-2, COST ACCOUNTING STANDARDS (APR 1998) pertain to this appeal:

COST ACCOUNTING STANDARDS (APR 1998)

(a) Unless the contract is exempt under 48 CFR 9903.201-1 and 9903.201-2, the provisions of 48 CFR Part 9903 are incorporated herein by reference and the Contractor, in connection with this contract, shall—

....

(4)(i) Agree to an equitable adjustment as provided in the Changes clause of this contract if the contract cost is affected by a change which, pursuant to subparagraph (a)(3) of this clause, the Contractor is required to make to the Contractor's established cost accounting practices.

(ii) Negotiate with the Contracting Officer to determine the terms and conditions under which a change may be made to a cost accounting practice, other than a change made under other provisions of subparagraph (a)(4) of this clause; provided that no agreement may be made under this provision that will increase costs paid by the United States.

(iii) When the parties agree to a change to a cost accounting practice, other than a change under subdivision (a)(4)(i) of this clause, negotiate an equitable adjustment as provided in the Changes clause of this contract.

6

(5) Agree to an adjustment of the contract price or cost allowance, as appropriate, if the Contractor or a subcontractor fails to comply with an applicable Cost Accounting Standard, or to follow any cost accounting practice consistently and such failure results in any increased costs paid by the United States. Such adjustment shall provide for recovery of the increased costs to the United States, together with interest thereon computed at the annual rate established under section 6621 of the Internal Revenue Code of 1986 (26 U.S.C. 6621) for such period, from the time the payment by the United States was made to the time the adjustment is effected. In no case shall the Government recover costs greater than the increased cost to the Government, in the aggregate, on the relevant contracts subject to the price adjustment, unless the Contractor made a change in its cost accounting practices of which it was aware or should have been aware at the time of price negotiations and which it failed to disclose to the Government.

## DECISION

Under Section 1502(f)(2) of the CAS statute, Congress unequivocally expressed its intent that as a condition of contracting with the government, the CAS clause/regulation provide that a contractor agree to a contract price adjustment, "*with interest, for any increased costs paid to the contractor...because of a change in the contractor's cost accounting practices.*"

There is no question that appellant initiated a change in its cost accounting practices here and agreed to pay a contract price adjustment for the increased costs paid by the government, consistent with the statute. As per the plain terms of the statute, interest must also be included on these increased costs. Section 1503(c) of the statute spells out the interest to be paid by the contractor. This interest has been held to be compound interest. *See Gates v. Raytheon Co.,* 584 F.3d 1062 (Fed. Cir. 2009), *rehearing and rehearing en banc denied,* 636 F.3d 1363 (Fed. Cir. 2011) (contractor liable for compound interest on CAS noncompliance). The CAS statute makes no distinction between the treatment of a contract price adjustment for increased costs paid due to a CAS noncompliance, and a contract price adjustment for increased costs paid due to a cost accounting change of the type here. Both are subject to the same statutory interest provision. As the former requires assessment of compound interest, so must the latter.

Appellant contends, however, that the government erred in processing this change under CAS clause FAR 52.230-2(a)(5) because it involved neither a CAS noncompliance

nor a failure to follow any cost accounting practice consistently.[5]  According to appellant, the ACO should have processed this change under CAS clause FAR 52.230-2(a)(4)(ii) and (iii), which subsections provide for the negotiation of terms and conditions of the change, the parties' agreement to the change and an equitable adjustment under the Changes clause of the contract, and do not provide for the payment of interest.

In any event, assuming, *arguendo*, that the ACO selected the "wrong" subsection of the CAS clause to process this contract price adjustment, it is nevertheless clear that this contract price adjustment for increased costs paid by the government due to this contractor-initiated cost accounting change is subject to interest under the CAS statute, and as concluded above, this interest must be compound interest.  Congress unequivocally expressed its intent to mandate interest and the amount of that interest under these circumstances, and this controls the result here.  *See Raytheon*, 584 F.3d at 1071-72 n.12 ("The intentions of the CAS Board in promulgating the CAS clause are clearly influenced by the authorizing statute, and we look to § 422(h)(4) [now Section 1503(c)] as part of this interpretation of the regulation that is incorporated into the contracts at issue."); *see generally Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984) (court must give effect to the unambiguous expressed intent of Congress); *Coalition of New York State Career Schools, Inc. v. Riley*, 129 F.3d 276, 279 (2nd Cir. 1997) (where plain language of statute speaks directly to the issue, regulations must give effect to the unambiguously expressed Congressional intent.).

Accordingly, it is the decision of the undersigned, pursuant to Board Rule 12.2, that appellant is obligated to pay compound interest on the increased costs paid by the government due to the subject cost accounting change.[6]

---

[5] Given the fact that appellant timely notified the government of this cost accounting change, *see* FAR 30.603-2(c)(1)(2), it also appears that this contract price adjustment does not precisely fit under FAR 52.230-2(a)(5).

[6] This Rule 12.2 decision does not address whether the specific compound interest amount in the COFD was accurately calculated.  The Board expects the parties to reach agreement on the interest amount due and owing, consistent with this decision, based upon the appropriate math and the documentation necessary and available to make the appropriate calculation.

ASBCA No. 59204 is denied.

Dated: 17 July 2014

JACK DELMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59204, Appeal of Allison Transmission, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals